IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHINSHO AMERICAN CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:20-cv-00577 |
| | § | |
| HYQUALITY ALLOYS, LLC | § | JURY DEMAND |
| | § | |
| Defendant. | § | |

**SHINSHO AMERICAN CORPORATION'S MOTION TO MODIFY PRELIMINARY INJUNCTION TO MOVE SUBJECT BAR TO NEUTRAL LOCATION**

Shinsho American Corporation ("Shinsho") files this *Motion to Modify Preliminary Injunction to Move Subject Bar to Neutral Location*, and in support thereof would respectfully show as follows:

**BACKGROUND**

On March 3, 2020, the Court signed an Agreed Order Granting Preliminary Injunction ("PI Order") (Dkt. 21) to protect the status quo in the above-referenced lawsuit. The PI Order enjoined and restrained Defendant HyQuality Alloys, LLC ("HQA") and its "officers, agents, servants, employees…" from, among other things, "[m]oving or relocating any of the Subject Bar from [the Demised Premises]."

The term "Subject Bar" was defined in the PI Order as a specific list of steel bars identified on Exhibit 2 of the PI Order. In addition, the term "Demised Premises" was defined in the PI Order as a facility that is owned and controlled by HQA, as further identified on Exhibit 1 to the PI Order.[1]

---

[1] Shinsho leased the Demised Premises under a Ground Lease as described in the lawsuit. Notwithstanding the Ground Lease, however, HQA personnel are located on and continue to control the Demised Premises.

Notwithstanding the prohibition against removing Subject Bar from the Demised Premises, the PI Order nevertheless gave HQA the ability to sell and ship Subject Bar from the Demised Premises, but only under clearly defined and agreed to parameters. Those parameters included, among other things, that Shinsho had to pre-approve the HQA sales price, and that HQA had to pay Shinsho 100% of the sales price **before** the Subject Bar could be removed and shipped from the Demised Premises to an HQA buyer. (PI Order at p. 2). Under the terms of the PI Order, after Shinsho receives the sales price, it was then required to pay 15% of the sales price back to HQA. *Id.*[2]

On March 16, 2021, Shinsho filed an Emergency Motion for Contempt and Request for a Show Cause Hearing (Dkt. 41). As the Court is now aware, the reason for the contempt motion was because HQA had repeatedly violated the PI Order by removing Subject Bar from the Demised Premises without paying Shinsho for the removed product and/or without seeking pre-approval for the sale or otherwise providing Shinsho with the required paperwork. This was not the first time Shinsho had been forced to notify the Court of HQA's violations of the PI Order.[3]

The Court held a telephone conference with the parties on March 19, 2021 to address the issues raised in Shinsho's motion for contempt. During the conference, the Court instructed HQA's counsel that HQA was required to comply with the Court's PI Order, and took Shinsho's

---

[2] Alternatively, the PI Order provides HQA the ability to sell Subject Bar to a buyer at or above a pre-approved sales price if the buyer is approved by Shinsho and has agreed in writing to pay Shinsho directly for the product within 30 days of the buyer's receipt of the product. Upon receipt of the sales price, Shinsho would then be required to pay 15% of the sales price to HQA.

[3] On March 10, 2020, Shinsho filed a motion for contempt to alert the Court to the fact that HQA was continuing to ship Subject Bar from the Demised Premises without paying Shinsho for the product in advance. (Dkt. 25). The Court denied the motion but clarified that HQA was required to pay Shinsho for the shipments, and admonished the parties that they should attempt to resolve future issues, if possible, without Court intervention. (Dkt. 26). With that admonition in mind, on July 8, 2020, Shinsho notified the Court of further violations of the PI Order by HQA so as to not waive compliance, but did not seek relief from the Court at that time. (Dkt. 31).

request for a show cause hearing under advisement. The Court also instructed the parties to report on the status of HQA's compliance the following week.

On March 25, 2021, Shinsho filed a Status Report to inform the Court that HQA continued to be in material violation of the PI Order, notwithstanding the Court's admonitions at the March 19 telephone conference. (Dkt. 47). On March 26, 2021, HQA filed its own Status Update that effectively acknowledged HQA's continued violations of the PI Order. (Dkt. 48).[4]

The Court ultimately held a Show Cause Hearing on April 21, 2021. (Dkt. 50 and 56). At the hearing, HQA's counsel again acknowledged that HQA had violated the PI Order by continuing to remove Subject Bar from the Demised Premises without first paying for the Subject Bar or providing Shinsho with the required paperwork. Accordingly, the Court sanctioned and ordered HQA to pay Shinsho's reasonable attorneys' fees in an amount to be determined at a later date.

The Court further indicated that because of the uncertainty created by HQA's repeated violations, the Court was open to issuing an order to modify the existing PI Order to move the Subject Bar from the Demised Premises to a neutral third-party location to protect the Parties' respective interests. Counsel for Shinsho and HQA conferred but unfortunately Shinsho's proposal to relocate the Subject Bars was refused.

---

[4] Although not as egregious as its prior violations, after the Status Reports were submitted, HQA continued to violate the PI Order. For example, on April 7, 2021, HQA shipped approximately $14,000 in Subject Bar from the Demised Premises, but did not pay for the product until several days later. (*See* Declaration of Yasunori Itoh attached as Exhibit 1). Similar late payments occurred in connection with shipments from the Demised Premises on April 8, 9, and 12 for another approximately $32,000. *Id.* Ultimately Shinsho received the payments and paperwork associated with these shipments a few days later. Nevertheless, that HQA continued to ship Subject Bar from the Demised Premises in violation of the PI Order confirms the necessity of the changes requested herein.

3

As a result, Shinsho is submitting this motion to relocate the Subject Bar to a neutral third-party location as described herein. Shinsho also conferred with and Intervener TransPecos Banks, SSB ("TransPecos"). Although disputed, TransPecos asserts that it has a security interest in some or all of the Subject Bar as collateral for an HQA debt. As such, TransPecos also has an interest in protecting the Subject Bar from further violations during the pendency of this lawsuit. TransPecos does not oppose this motion and supports relocating the Subject Bar to a neutral location.

In addition, on May 11, 2021, TranPecos issued a *Notice of Trustee's Sale Under Deed of Trust* to schedule a foreclosure sale of certain real property for June 1, 2021 at 10:00 a.m. A copy of the foreclosure notice is attached as Exhibit 2. The real property noticed for sale includes the Demised Premises. *Id.* That the ownership of the Demised Premises may change in the near future provides a further reason to relocate the Subject Bar to a neutral location, as requested by this Motion.

## ARGUMENT

It is well established that a district court has the discretion and inherent authority to modify a preliminary injunction for a variety of reasons. *See, e.g,, System Federation No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961) (holding district court has "wide discretion" to modify an injunction based on changed circumstances or new facts); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380 (1992) ("sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.") (*quoting System Federation*, 364 U.S. at 647); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1365-66 (5th Cir. 1995) (same); *Movie Systems, Inc. v. MAD Minneapolis Audio Distributors*, 717 F.2d 427, 430 (8th Cir. 1983) ("i]n modifying a

preliminary injunction, a district court…is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason."); *A&M Records Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (same).

A district court's decision of whether to grant or deny a proposed change to a preliminary injunction is "measured by whether the requested modification effectuates or thwarts the purpose behind the injunction." *Biediger v. Qunnipiac University*, 928 F. Supp. 414 (D. Conn 2013) (*citing Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)). To that end, if because of a significant change in the facts or law, a modification is necessary to effectuate the purpose of a preliminary injunction, the district court has wide discretion to modify the injunction as necessary to effectuate that purpose. *See, e.g., A&M Records Inc.,* 284 F.3d at 1098 ("[a] district court has inherent authority to modify preliminary injunction in consideration of new facts."); *Alberti*, 46 F.3d at 1366 (same); *Rufo*, 502 U.S. at 378 (same).

Moreover, when considering whether changes in the facts or law support modifying an injunction, it is immaterial that the injunction sought to be modified was originally entered as an "agreed" injunction. This is because courts view an agreed injunction as "an agreement that the parties desire and expect will be reflected in and be enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Alberti*, 46 F.3d at 1366 (*quoting Rufo*, 502 U.S. at 378) (holding court had discretion to modify an analogous consent decree even though it was originally entered by the agreement of the parties). *See also Total Safety v. Knox*, 2019 WL 6894683 *2 (S.D. Tex. December 18, 2019) ("[t]hat [the defendant] may have reconsidered the wisdom of her agreement [to a preliminary injunction] does not convince the Court that justice requires reconsideration of the very injunction to which she agreed.").

5

Here, the primary questions for the Court in connection with the proposed modification at issue are: (i) has there been a sufficient change in the facts or law to warrant a modification, and (ii) does the proposed modification effectuate the purpose behind the injunction in the first instance? If the answers to these questions are yes, the Court has wide discretion to fashion a modification of the existing PI Order in a manner to protect the interests of the parties pending a final ruling in this matter.

As documented by the events that led to the show cause hearing on April 21, 2021, HQA repeatedly shipped Subject Bar from the Demised Premises in violation of the PI Order. These violations included HQA's failure to pay for and/or provide paperwork to Shinsho for more than $200,000 in Subject Bar prior to shipping the bar from the Demised Premises to its customers. Moreover, the only reason Shinsho became aware of the illegal shipments was because Shinsho retained a private security firm to monitor the entrance of the Demised Premises. Had this security not been in place, Shinsho would likely have never discovered that HQA was shipping hundreds of thousand dollars in product from the Demised Premises in direct violation of the PI Order.

HQA violated and continued to violate the PI Order even after Shinsho notified HQA of its violations, and even after the Court informed HQA at the March 19, 2021 status conference that HQA was required to comply with the terms of the PI Order before product could be shipped from the Demised Premises. As a result of HQA's conduct, there has been a significant change in the underlying facts from when the PI Order was originally issued in that Shinsho and TransPecos now have a legitimate and documented fear that unless the PI Order is modified, HQA will continued to improperly ship Subject Bar from the Demised Premises in direct violation of the PI Order.

As discussed further below, the procedures requested in this motion fairly and appropriately address the change in the underlying facts caused by HQA's conduct. Under the relief sought herein, HQA would still have the ability to sell Subject Bar under the existing terms in the PI Order. The only change to the status quo that impacts HQA would be that the trucks picking up Subject Bar for delivery to HQA's customers would no longer travel to the Demised Premises, but instead would pick up the Subject Bar at issue from a nearby Storage Yard. Given the changed circumstances in this case, the proposed modifications are appropriate and warranted to protect the interests of all parties concerned.

### A. Proposed Modifications to Relocate Subject Bar to Neutral Location

Shinsho and TransPecos are respectfully asking that the Court modify the terms of the existing PI Order so as to allow the relocation of the Subject Bar from the Demised Premises to a neutral third-party location (the "Storage Yard"). Under these procedures, the Storage Yard would not be owned or controlled by any party to this lawsuit. Instead, the Storage Yard would be in the exclusive control of a third-party manager (the "Yard Manager"). Shinsho and TransPecos propose that the Storage Yard be at the Richardson Companies located at 8815 Mississippi Street, Houston Texas, 77029, and the Yard Manager be Kelly Richardson, President of the Richardson Companies.

The timing and manner by which the Subject Bar would be relocated to the Storage Yard is as follows:

1. All Subject Bar currently located at the Demised Premises would be shipped to the Storage Yard within 90 days from the date the Court signs an order to modify the existing PI Order as requested herein (the "Transition Period"). If necessary to complete the relocation, the Transition Period can be extended by the mutual agreement of the parties, or by the Court upon a request by one or more of the parties.

2. Prior to relocation, HQA will provide Shinsho with its most current inventory list of Subject Bar located at the Demised Premises.

3. During the Transition Period, Shinsho, or its agents, will have reasonable access to the Demised Premises for the purpose of identifying, segregating and shipping Subject Bar to the Storage Yard.

4. Shinsho will be responsible to pay for: (i) the cost to relocate the Subject Bar to the Storage Yard, (ii) the cost to lease the Storage Yard for storage of the Subject Bar, and (iii) the cost of the Yard Manager to manage the Subject Bar at the Storage Yard.

5. During the Transition Period, no Subject Bar will be removed from the Demised Premises for any reason other than to transport such Subject Bar to the Storage Yard. Nevertheless, during the Transition Period, HQA can sell steel bars that Shinsho owns at other Texas facilities, subject to the terms of the existing PI Order.

6. HQA will be permitted to sell and remove any Subject Bar located at the Storage Yard, subject to the terms of the existing PI Order. The procedure for the removal of Subject Bar from the Storage Yard is as follows:

    a. Once Shinsho has confirmed payment for Subject Bar on a Purchase Order,[5] Shinsho will promptly issue a Delivery Order to HQA and the Yard Manager that corresponds to the Subject Bar in the Purchase Order.

    b. At the time of shipment, HQA, or its agent, is required to present HQA's Delivery Order to the Yard Manager. When the Yard Manager confirms HQA's Delivery Order matches the Yard Manager's Delivery Order, the Yard Manager is required to immediately issue a Bill of Lading and release to HQA, or its agent, the Subject Bar identified in the Delivery Order.

7. Other than as provided in paragraph 6 above, no Subject Bar can be removed from the Storage Yard by any person or entity for any reason while the modified PI Order is in effect.

8. During the pendency of the modified PI Order, Shinsho, HQA, TransPecos, and their respective agents, shall have equal access to the Storage Yard during normal business hours to inventory or inspect the Subject Bar. All costs associated with any such inventory or inspection will be borne solely by the party conducting the inventory or inspection.

9. Relocating the Subject Bar from the Demised Premises to the Storage Yard does not change, impact, or waive in any way any ownership claim, cause-of-action, defense, assertion or security interest that Shinsho, HQA or TransPecos has, may have, or claims to have in the Subject Bar.

---

[5] Alternatively, Shinsho is also required to promptly issue a Delivery Order to HQA and the Yard Manager upon receipt of received written confirmation from an approved buyer that the buyer has agreed to pay the sales price directly to Shinsho within 30 days of the buyer's receipt of product described in the Delivery Order.

### B. The Modifications are Reasonable, Fair and Neutral to All Parties.

As discussed above, the modifications proposed by this motion are reasonable and fairly respects the interests of Shinsho, HQA and TransPecos in the Subject Bar. First and foremost, the modifications ensure that HQA cannot intentionally, or unintentionally, violate the PI Order by shipping Subject Bar before HQA has paid Shinsho and/or provided Shinsho with the required paperwork. This is because the Yard Manager cannot release Subject Bar to HQA unless and until the Yard Manager confirms that HQA has complied with its payment and paperwork obligations to Shinsho. On the other hand, once HQA has complied with its obligations, the Yard Manager is required to release the Subject Bar to HQA. The payment and paperwork obligations have not changed from the existing PI Order. As such, if HQA intends to comply with the terms of the existing PI Order, HQA cannot and does not have a legitimate basis to object to the verification of its compliance by a neutral third-party before the Subject Bar can be released from the Storage Yard.

Similarly, HQA cannot object to the cost of the Storage Yard or the Yard Manager because Shinsho has agreed to pay those costs. Rather, from HQA's perspective, the only change from the current process is that instead of a delivery truck picking up Subject Bar from the Demised Premises for delivery to an HQA customer, the truck will instead pick up the Subject Bar at the Storage Yard for delivery.

From Shinsho's perspective, the proposed modifications gives confidence and certainty that HQA will no longer be in a position to remove Subject Bar from the Demised Premise without first paying Shinsho and providing the required paperwork. In addition, Shinsho will also no longer have to employ a private security firm to monitor and document illegal shipments from the Demised Premises. Shinsho has been required to spend more than $100,000 for this surveillance

since this lawsuit began. After the Subject Bar has been relocated to the Storage Yard, those surveillance costs will no longer be necessary.

From TransPecos' perspective, the above proposal provides further protection for its alleged collateral interest in the Subject Bar. This is because the Subject Bar would be in the control of the Yard Manager, and not HQA. With this added layer of protection, TransPecos' legitimate fear that its alleged collateral could be improperly removed by HQA and "disappear" is no longer a concern.

Finally, implementation of the proposed modifications would not impact or waive in any way any claim, defense, or interest that HQA, Shinsho, or TransPecos has in the Subject Bar. As such, if adopted by the Court, no party would be compromising or waiving any legal position that it has or may have related to the Subject Bar in this case.

Accordingly, Shinsho respectfully requests the Court enter an order to modify the PI Order as detailed herein.

## CONCLUSION

For the reasons expressed above, Shinsho respectfully requests the Court issue an order to modify the PI Order as detailed above.

Dated: May 14, 2021

Respectfully submitted,

*/s/ Charles B. Hampton*
Thomas M. Farrell
State Bar No. 06839250
Charles B. Hampton
State Bar No. 00793890
tfarrell@mcguirewoods.com
champton@mcguirewoods.com
MCGUIREWOODS LLP
600 Travis St., Suite 7500
Houston, TX 77002
(713) 571-9191
(713) 571-9652 (Fax)

ATTORNEYS FOR PLAINTIFF
SHINSHO AMERICAN CORPORATION

## CERTIFICATE OF CONFERENCE

I hereby certify that by phone and email, counsel for Shinsho and HQA have conferred on multiple occasions in an attempt to reach an agreement on modifying the PI Order as requested herein, and have been unable to reach an agreement. In addition, TransPecos through counsel has indicated that they are not opposed to this motion.

*/s/ Charles B. Hampton*
Charles B. Hampton

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served to counsel of record via the Court's ECF system on May 14, 2021.

*/s/ Charles B. Hampton*
Charles B. Hampton