IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHINSHO AMERICAN CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:20-cv-00577 |
| | § | |
| HYQUALITY ALLOYS, LLC | § | JURY DEMAND |
| | § | |
| Defendant. | § | |

## JOINT PRETRIAL ORDER

Plaintiff Shinsho American Corporation ("Shinsho") and Intervenor Defendant TransPecos Banks, SSB ("TransPecos") submit the following:[1]

## APPEARANCE OF COUNSEL

Plaintiff Shinsho American Corporation is represented by Thomas Farrell and Charles Hampton of McGuireWoods LLP, 845 Texas Ave., Suite 2400, Houston, Texas 77002; telephone number: (713) 571-9191.

Intervening Defendant TransPecos Banks, SSB is represented by Mark Taylor, Morris D. Weiss, and William R. "Trip" Nix of Waller Lansden Dortch & Davis LLP, 100 Congress Ave., 18th Floor, Austin, Texas 78701; (512) 685-6400.

Defendant HyQuality Alloys, LLC ("HQA") is not currently represented by counsel, and therefore cannot appear at trial in this matter.[2]

---

[1] The parties are currently continuing to work on Stipulations and revising Witness and Exhibit Lists, and intend to file an Amended and/or Supplemental Order on Wednesday April 6, 2022.

[2] On October 7, 2021, counsel for HQA withdrew from representing HQA, and no new counsel has made an appearance on HQA's behalf (Dkt. No. 90). Without counsel, HQA cannot appear at trial to prosecute or defend this action. *See, e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ("uniformly held that 28 U.S.C. §1654…does not allow corporations, partnerships, or associations to appear in federal court otherwise then by licensed counsel"); *Memon Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (same).

## STATEMENT OF THE CASE

Shinsho American Corporation ("Shinsho") is a company that sells and distributes steel products, including rounded bars and seamless tube products ("Bars"), to customers in the United States. HyQuality Alloys, LLC ("HQA") is a company that also sells and distributes Bars, primarily in the Houston area. TransPecos Banks, SSB ("TransPecos") is Texas bank that made two loans to HQA secured, in part, by HQA owned inventory.

At issue in this lawsuit are certain Bars that the parties have referred to as the "Subject Bar." The Subject Bar was shipped by Shinsho to a facility located at 32703 Tamina Road, Magnolia, Texas (the "Demised Premises") under the terms of a Consignment Agreement between Shinsho and HQA dated February 21, 2018. In addition, under the terms of a Ground Lease between Shinsho and HQA, Shinsho has leased the Demised Premises from HQA from June 1, 2019, to the present in order to store the Subject Bar.

It is Shinsho's position that under the terms of the Consignment Agreement and Ground Lease, Shinsho owns and has a superior interest in the Subject Bar visa-a-vis other parties, including HQA and TransPecos. TransPecos denies these allegations. Instead, it is TransPecos' position that HQA owns the Subject Bar, and therefore TransPecos has a superior interest in the Subject Bar as collateral for the loans made by TransPecos to HQA. Alternatively, TransPecos has alleged that even if the Subject Bar is considered consigned inventory that is owned by Shinsho, TransPecos still has a superior interest in the Subject Bar as a secured creditor under Article 9 of the Texas Uniform Commercial Code. Finally, TransPecos has alleged that after this lawsuit was filed, Shinsho unlawfully obtained proceeds from the sale of Subject Bar in which TransPecos has a superior interest. Shinsho denies all of these allegations.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a). The amount in controversy exceeds $75,000.00, exclusive of interest and costs. In addition, TransPecos is a state savings bank organized under the laws of the State of Texas with its principal place of business in Texas, and Shinsho is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Michigan.

## MOTIONS

Contemporaneous with the filing of this Joint Pre-Trial Order, Shinsho is filing a *Motion to Strike Amended Answer and Counterclaims, Dismiss Counterclaims and for Default* (and TransPecos may file a joinder or similar motion) in connection with the following respective pleadings because HQA is not represented by licensed legal counsel in this proceeding, and therefore cannot appear or participate in this lawsuit:

- Defendant HyQuality Alloys, LLC's Answer to Plaintiff Shinsho American Corporation's Second Amended Complaint, Affirmative Defenses and Counterclaims (Dkt. 85).

- Defendant HyQuality Alloys, LLC's Answer to Intervenor TransPecos Banks, SSB's Original Counterclaim and Cross-Claim (Dkt. 84); [If TransPecos files a joinder or similar motion to the motion to strike]

In addition, unless the parties agree to a bench trial, as discussed further below, Shinsho and TranPecos intend to file limited Motions in Limine by separate cover.

## CONTENTIONS OF THE PARTIES

### Shinsho Contentions[3]

On or about February 21, 2018, Shinsho and HQA entered into a Consignment Agreement. Under the terms of that agreement, the parties agreed that Shinsho would from time to time ship steel bars (defined as the "Consigned Goods" in the Consignment Agreement) to a facility located at 32703 Tamina Road, Magnolia, Texas 77354 (the "Demised Premises"). Paragraph 5 of the Consignment Agreement further states:

> The Consigned Goods shall remain [Shinsho's] property until released from consignment at the request of HQA, at which time they shall be purchased by HQA, and shall at all other times prior to purchase by HQA be considered to be held by HQA only on a consignment basis. Upon [Shinsho's] written notice, [Shinsho] shall invoice HQA for any Consigned Goods which have not been released from consignment within sixty (60) days of receipt at the [Demised Premises] or which is held by HQA at the expiration or earlier of this Agreement.

In accordance with the terms of the Consignment Agreement, Shinsho shipped certain steel bars to the Demised Premises. In this litigation, the parties have referred to these bars as the "Subject Bar."[4] HQA never requested the Subject Bar be released from Consignment, and Shinsho never released the Subject Bar from consignment. In addition, Shinsho never issued a written notice to HQA that Shinsho intended to release the Subject Bar from consignment, Shinsho never invoiced HQA for the Subject Bar, and HQA never paid Shinsho for the Subject Bar. Accordingly,

---

[3] Shinsho incorporates by reference, as though fully set out herein, all statements, allegations and claims asserted in the following pleadings that Shinsho has filed in this lawsuit: (i) *Plaintiff's Second Amended Complaint* (Dkt. 80), (ii) *Shinsho American Corporation's Answer to TransPecos' Original Counterclaim and Cross-Claim* (Dkt. 82), and (iii) *Plaintiff's Answer to Defendant HyQuality Alloys, LLC's First Amended Counterclaim* (Dkt. 83).

[4] An itemized list of the Subject Bar was attached as Exhibit 2 to the Preliminary Injunction entered by the Court on March 20, (Dkt.21-2), as modified on June 23, 2021 (Dkt. 75) (collectively the "Preliminary Injunction"). During the course of this litigation, and in accordance with the terms of the Preliminary Injunction, certain items were released from the Demised Premises when the material was sold by HQA to a third-party customer. Accordingly, the Subject Bar at issue in this lawsuit is only such bars that are still on the Demised Premises. An updated list of Subject Bar still on the Demised Premises will be included on Shinsho's Trial Exhibit list.

4

under the terms of the Consignment Agreement and applicable law, the Subject Bar remains property owned by Shinsho.

In addition, on June 1, 2019, Shinsho and HQA entered a Ground Lease Agreement whereby Shinsho leased the Demised Premises from HQA as a location for Shinsho to store the Subject Bar. The Ground Lease has been in effect since June 1, 2019, and Shinsho is current with all Rental Fees required by paragraph 2 of that agreement. The Ground Lease has never been terminated and remains in full force and effect according to its terms. In addition, Shinsho has complied with all of its obligations under the Ground Lease. Accordingly, in addition to Shinsho continuing to own the Subject Bar, the Subject Bar itself is currently stored on real property leased to Shinsho pursuant to the terms of the Ground Lease.

Prior to and during the pendency of this lawsuit, HQA breached the Ground Lease, unlawfully locked Shinsho out of the Demised Premises, and unlawfully sought to convert Shinsho's property by, among other things, refusing Shinsho access to the Demised Premises, interfering with Shinsho's use and enjoyment of the Demised Premises, interfering with Shinsho's right and ability to remove the Subject Bar from the Demised Premises, asserting false claims of ownership over the Subject Bar, and improperly purporting to exercise dominion and control over the Subject Bar. Shinsho is entitled to recover from HQA the monetary damages that Shinsho suffered as a result of HQA's breaches and wrongful conduct.[5] Equally important, Shinsho is also entitled to the entry of (i) a *Writ of Possession or Reentry* under Section 93.003 of the Texas

---

[5] Such damages include, but are not limited to, (i) fees for security personnel Shinsho was required to hire to monitor the Demised Premises to document and monitor any unauthorized removal of Subject Bar by HQA or its agents, (ii) fees/salary for on-site employees that Shinsho was forced to hire to monitor the Demised Premises, (iii) costs and expenses for trips by Shinsho representatives to the Demised Premises to monitor and inventory the Subject Bar, and (iv) the value of Subject Bar that HQA removed from the Demised Premises and/or improperly converted without payment to Shinsho. In addition, in the unlikely event the Court were to rule that HQA, not Shinsho, owns the Subject Bar, HQA has not paid Shinsho at all for Subject Bar that remains on the Demised Premises. Accordingly, and only in that unlikely event, Shinsho seeks a judgment against HQA for price of the Subject Bar that remains on the Demised Premises.

Property, and (ii) a *Writ of Sequestration,* as necessary and appropriate for Shinsho to enter and recover possession of the Demised Premises and remove the Subject Bar therefrom, and a declaration pursuant to 28 U.S.C. § 2201 and/or Section 37.001 et. seq. of the Texas Civil Practice and Remedies Code that Shinsho is the owner of the Subject Bar that remains on the Demised Premises.

In addition, Shinsho is entitled to the entry of a Permanent Injunction against HQA to restrain and enjoin and HQA, and all those in active concert or participation with HQA, from engaging in any of the following activities or conduct:

- Interfering in any way with Shinsho's access to the Demised Premises;

- Preventing or interfering with Shinsho's ability to remove the Subject Bar from the Demised Premises;

- Moving or relocating any of the Subject Bar from its current location;

- Damaging or causing any physical damage to the Subject Bar;

- Selling or purporting to grant any person or entity any interest in or to the Subject Bar;

- Engaging in any activity to exercise dominion or control over the Subject Bar or to assert any ownership or other interest in the Subject Bar;

- Communicating to any third-party that HQA owns the Subject Bar;

- Placing any property or bar owned by HQA on the Demised Premises or otherwise commingling HQA property with the Subject Bar; and

- Removing from the Subject Bar any labels, part numbers or other identifying features.

For the same reasons, Shinsho is entitled to the entry of an affirmative permanent injunction that provides Shinsho with authorization to enter and recover possession of the Demised Premises, and remove the Subject Bar therefrom.

On January 25, 2022, the Court entered a Memorandum Opinion and Order ("MSJ Order") (Dkt 94) that granted a Motion for Partial Summary Judgment in the amount of $9,385,865.61

against HQA in favor of Shinsho. The MSJ Order concerned a separate category of steel product that HQA purchased from Shinsho and a related company, but had not yet paid for (defined in the MSJ Order as the "Purchased Bars."). Shinsho is entitled to a Final Judgment against HQA in the amount of $9,385,865.61 as payment for these Purchased Bars. Shinsho is also entitled to recover from HQA all allowable pre-judgment and post-judgment interest for this and all other monetary damages awarded to Shinsho in this matter. In addition, Shinsho is entitled to recover from HQA all reasonable and necessary attorneys' fees that Shinsho incurred in the prosecution of this action in an amount to be determined at trial.

In this lawsuit, TransPecos filed an Original Counterclaim and Cross-Claim against HQA and Shinsho (Dkt. 78). Among other things, TransPecos alleged that "upon information and belief…HyQuality is the owner of such Subject [Bar], and accordingly, the Subject [Bar] constitutes TransPecos' Collateral." Based on this allegation, TransPecos seeks a declaration that TransPecos has a lien on the Subject Bar, and proceeds thereof, that "is superior to any interest held by Shinsho, and that the Subject [Bar] constitutes TransPecos' Collateral." TransPecos also asserted a claim of "conversion" against Shinsho, alleging that Shinsho assumed and exercised unlawful dominion and control over proceeds from the sale of the Subject Bar to the exclusion and detriment of TransPecos. In connection with this claim, TransPecos is seeking "recovery of all amounts from the proceeds of the sale of the Subject [Bar] that have been turned over to Shinsho, along with prejudgment interest as allowed by law."

Shinsho denies all such allegations by TransPecos. Under the express terms of the Consignment Agreement, the Subject Bar "shall remain [Shinsho's] property until released from consignment…" HQA never requested the Subject Bar be released from Consignment, and Shinsho never released the Subject Bar from consignment. In addition, Shinsho never issued a

written notice to HQA that Shinsho intended to release the Subject Bar from consignment, Shinsho never invoiced HQA for the Subject Bar, and HQA has never paid Shinsho for the Subject Bar. Accordingly, under the express terms of the Consignment Agreement and applicable law, the Subject Bar remains property owned by Shinsho, and as such, is not part of the collateral securing loans made by TransPecos to HQA. Shinsho is therefore entitled to a declaratory judgment that Shinsho owns the Subject Bar, and that Shinsho's ownership interest in the Subject Bar is superior to any interest alleged by TransPecos or HQA in this lawsuit.

TransPecos has alternatively alleged that to the extent the Subject Bar is a consigned good owned by Shinsho, Shinsho did not perfect its interests in the Subject Bar under the Uniform Commercial Code (the "UCC"), and thus, according to TransPecos, TransPecos' security interest in the Subject Bar is first and primary over any rights that Shinsho may have. Although unstated, TransPecos is presumably referring to its rights as a secured creditor under Article 9 of the UCC, as adopted in the Texas Business & Commerce Code.

TransPecos' allegations are wrong, however, because any right that TransPecos may otherwise have as a secured creditor under Article 9 of the UCC does not apply to Subject Bar held by HQA on consignment under the terms of the Consignment Agreement. This is because Article 9 of the UCC, by definition, does not apply to the "consignment" of goods to a "merchant…generally known by its creditors to be substantially engaged in selling the goods of others." Tex. UCC § 9.102 (20) (definition of "Consignment"). HQA was generally known by its creditors, including TransPecos, to be substantially engaged in selling the goods of others. Here, TransPecos admits that prior to making loans to HQA, and prior to filing a UCC security interest in connection with those loans, TransPecos knew that a substantial part of HQA's business was engaged in the selling the goods of others on consignment. This admission is supported by the due

8

diligence documentation that TransPecos gathered and relied upon as part of its decision process in connection with making these loans.  As such, Article 9 of the UCC simply does not apply to the Subject Bars at issue in this lawsuit.  Accordingly, Shinsho's interest as the owner of the Subject Bars is superior to any interest alleged by TransPecos or HQA in this lawsuit, and Shinsho is entitled to a declaratory judgment to that effect.

TransPecos' claim for "conversion" fails for the same reasons.  In addition, TransPecos' allegation that "Shinsho has assumed and exercised unlawful dominion and control over proceeds from the sale of the Subject [Bar] to the exclusion and detriment of TransPecos" fails for three additional reasons.  First, contrary to TransPecos' allegations, Shinsho has not received any "proceeds from the sale of the Subject [Bar]" from HQA or anyone else.  Instead, as confirmed by HQA, the proceeds from HQA's sale of Subject Bar as permitted by the Preliminary Injunction was paid to entities other than Shinsho.  In this regard, HQA's corporate representative testified in this lawsuit that:

> HQA's customers pay our financing partner, which is Crestmark.  The customer pays after the material is shipped.  Our customers have terms.  So customers usually pay between 30 and 60 days after the steel is shipped….We are technically buying steel from Shinsho on a daily basis as we sell it….So if we get…a customer order, let's say, today for $100 of steel that we have in stock, we pay Shinsho $85 of that $100 order, Shinsho releases the material, we ship the material, and our customer eventually pays our financing company Crestmark $100.

Thus, to the extent any entity other than HQA received "proceeds from the sale of the Subject [Bar]," that entity was HQA's financing company, Crestmark, not Shinsho.

Second, if assuming Shinsho received proceeds from the sale of Subject Bar, there is no basis for the allegation that Shinsho "exercised unlawful dominion and control" over any such proceeds.  To the extent Shinsho has received any money in connection with the Subject [Bar] at issue in this lawsuit, that money was received pursuant to and in accordance with the Preliminary

9

Injunction entered by the Court on March 3, 2020, and modified on June 23, 2021. TransPecos, at various times in this case, has indicated that it was considering seeking a modification of the Preliminary Injunction to require that funds be escrowed, or that Shinsho be precluded from obtaining any funds pursuant to the process set forth therein. TranPecos never sought any such modification, thereby acquiescing to the terms of the Preliminary Injunction and estopping TransPecos from making any claims of conversion against Shinsho. Accordingly, any allegation that Shinsho converted TransPecos' property by unlawfully receiving proceeds from the sale of Subject Bar has no basis and must be dismissed.

Finally, to recover for conversion, TransPecos would be required to show that it suffered an injury as a result of Shinsho's actions. Here, even assuming TransPecos could satisfy the other elements of a conversion claim against Shinsho, which it cannot, the claim still fails because TransPecos cannot show that it suffered an injury. Among other things, this is because the value of Subject Bar that is still on the Demised Premises substantially exceeds TransPecos' claims against HQA, and TransPecos also has substantial other collateral and guarantees that it can use to satisfy all amounts due TransPecos from HQA.

## **TransPecos Contentions[6]**

HyQuality is an obligor to TransPecos under a Promissory Note dated September 16, 2016, in the original principal amount of $750,000.00 ("Note 1"). HyQuality is also on obligor under a Promissory Note with TransPecos dated September 16, 2016, in the original principal amount of $3,829,000.00 ("Note 2"). The outstanding principal balance of Note 1 is $697,787.12. The outstanding principal balance of Note 2 is $2,939,565.46. As of May 19, 2021, accrued interest

---

[6] TransPecos incorporates by reference, as though fully set out herein, all statements, allegations and claims asserted in the following pleadings that TransPecos has filed in this lawsuit: Motion to Intervene [Dkt. 36]; Original Counterclaim and Cross-Claim [Dkt. 78]; Answer to Shinsho's Second Amended Complaint [Dkt. 81]

on Note 1 was $53,337.69; plus late fees in the amount of $1,074.84, with a per diem of $114.70. Accrued interest on Note 2 as of the same date was $366,558.18, with a per diem of $624.15. Both Note 1 and Note 2 have been accelerated, and the principal and interest are due and owing, having been accelerated as of May 21, 2020.

Both Note 1 and Note 2 are secured by Deeds of Trust and Security Agreements, with liens perfected by filing the Deeds of Trust in the real property records of Montgomery County, Texas, and properly and timely filed UCC-1 statements. The collateral securing repayment of Note 1 and Note 2 include all or substantially all of HyQuality's assets, including, among other things, inventory, raw materials and finished goods , and the proceeds thereof (the "Collateral"). TransPecos contends that the Subject Bar is part of its Collateral.

Shinsho has asserted that HyQuality is in possession in of in excess of $20 million of Subject Bar that is owned by Shinsho. Based upon the filings in this lawsuit and the representations and statements made by HyQuality, HyQuality is the owner of the Subject Bar and, accordingly, the Subject Bar constitutes TransPecos' Collateral. HyQuality treated the Subject Bar as owned, represented it was owned, and Shinsho did not take actions (at least until filing this lawsuit) to act or state that HyQuality did not own the Subject Bar. Shinsho and HyQuality operated in a manner in which HyQuality either treated the Subject Bar as owned, with Shinsho's knowledge, or operated in what was effectively a debtor/creditor relationship in which Shinsho extended millions of dollars in credit to HyQuality for the purchases

Alternatively, to the extent that the Subject Bar is a consigned good, Shinsho has not perfected its interests under the Uniform Commercial Code and, accordingly, TransPecos' security interest is first and primary. Moreover, the property on which the Subject Bar is stored is actually

owned by an affiliate of HyQuality, Magnolia Storage & Logistics, LLC ("Magnolia"), and there is no agreement between Shinsho and Magnolia.

With respect to the consignment issue, a consignee (HyQuality, if the Court deterrmines the Subject Bar was consigned and not owned outright by HyQuality is deemed to have the same rights and title to goods that the consignor had (or had power to transfer) for purposes of determining the rights of the consignee's creditors and purchasers for value while the goods are in the consignee's possession. Tex. Bus. & Com. Code § 9.319(a). Consequently, a consignee's creditor can acquire judicial liens and security interests in the consigned goods. Tex. Bus. & Com. Code § 9.319, UCC Comment 2.

UCC 9-102 (Tex. Bus. & Comm. Code) defines a consignment as a transaction of any kind that involves goods being delivered to a merchant which deals in that type of property for the purpose of sale. A consigner's interest in their consigned goods is a purchase-money security interest. A consignment subject to Article 9 is a purchase money security interest in inventory. *Id*. at 9-103(D). A consignor follows the same procedures as an inventory financier to achieve super-priority. 9-324, Comment 7. In order to perfect the interest, the consignor must have provided notice of its interest to TransPecos, which had a properly-filed UCC. *Id*. at 9-324(B).

In short, Shinsho never filed a UCC statement perfecting an interest, and never provided notice to TransPecos, which had filed its UCC-1. Likewise, Shinsho's failure to comply with the requirements of Texas law and the UCC, and its actions above in not taking actions (until filing suit) to assert an ownership interest, give rise to defenses of waiver and estoppel.

Additionally, TransPecos contends that the sale proceeds received by Shinsho are proceeds of TransPecos' Collateral (and themselves Collateral) and, accordingly, Shinsho has converted TransPecos' Collateral. TransPecos also seeks a declaratory judgment pursuant to 28 U.S.C.

§2201 and/or Section 37.001 *et seq.* of the Texas Civil Practice and Remedies Code that its lien on the Subject Bar and proceeds thereof is superior to any interest held by Shinsho, and that the Subject Bar constitutes TransPecos' Collateral. TransPecos seeks recovery of attorneys' fees pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code.

TransPecos further disagrees with Shinsho's contention that is was not the recipient of "proceeds" because HyQuality is factoring its invoices. This argument ignores the fact that the recipient of those proceeds, regardless of the manner of delivery, was Shinsho. Moreover, regardless of the Injunction, Shinsho cannot simply take that which belongs to TransPecos; at a minimum, it should be required to turnover the proceeds (up to the amount of the debt owed to TransPecos). Similarly, TransPecos disagrees with Shinsho's contention that there was no consignment because HyQuality was purportedly generally known to be selling the goods of others.

## ADMISSIONS OF FACT

Shinsho and TransPecos are continuing to confer on possible agreed admissions and intend to supplement this filing on April 6, 2022.

## CONTESTED ISSUES OF FACT

Shinsho and TransPecos are continuing to confer on possible agreed admissions. To the extent agreements cannot be reached, the parties intend to supplement with contested issues of fact on April 6, 2022.

## AGREED APPLICABLE PROPOSITIONS OF LAW

Shinsho and TransPecos are continuing to confer and intend to supplement this filing on April 6, 2022.

## CONTESTED ISSUES OF LAW

Shinsho and TransPecos are not aware of any contested issues of law as between these parties, other than the application and effect of Article 9 and other applicable state law to the determination of the (1) the ownership of the Subject Bar, and (2) the priority of Shinsho's and TransPecos' respective interests in the Subject Bar.

## EXHIBITS

Exhibit Lists will be filed on Wednesday April 6, 2022.

## WITNESSES

Witness Lists will be filed on Wednesday April 6, 2022.

## SETTLEMENT

Although the parties are amenable to continuing discussions in an effort to settle this matter, to date a settlement has not been reached. The parties have not attended mediation.

## TRIAL

A jury trial has been demanded, but Shinsho and TransPecos are conferring on whether to waive a jury trial and consent to a bench trial. The parties estimate the trial will take 2 to 3 days.

## ADDITIONAL ATTACHMENTS

If a bench trial, Shinsho and TransPecos do not anticipate filing any Motions in Limine. If a jury trial, Shinsho and TranPecos will file limited Motions in Limine by separate cover. In addition, if necessary, the parties will submit a proposed Jury Charge with instructions, definitions and questions at a later date by separate cover.

Date

JUDGE GRAY MILLER
UNITED STATES DISTRICT JUDGE

Respectfully submitted this 1st day of April, 2022.

                                                  Respectfully submitted,

<u>/s/ Charles B. Hampton</u>
Thomas M. Farrell, *Attorney-in-Charge*
Texas Bar No. 06839250
Charles B. Hampton
Texas Bar No. 00793890
tfarrell@mcguirewoods.com
champton@mcguirewoods.com

ATTORNEYS FOR PLAINTIFF
SHINSHO AMERICAN CORPORATION

OF COUNSEL:
McGuireWoods LLP
845 Texas Ave., Suite 2400
Houston, TX  77002
(713) 571-9191
(713) 571-9652 (Fax)

<u>/s/ Mark C. Taylor</u>
Mark C. Taylor, *Attorney-in-Charge*
Texas Bar No. 19713225
Morris D. Weiss
Texas Bar No. 21110850
William R. "Trip" Nix
Texas Bar No. 24092902
mark.taylor@wallerlaw.com
morris.weiss@wallerlaw.com
trip.nix@wallerlaw.com

ATTORNEYS FOR INTERVENING
DEFENDANT TRANSPECOS
BANKS, SSB

OF COUNSEL:
Waller Lansden Dortch & Davis LLP
100 Congress Ave., 18th Floor
Austin, TX  78701
(512) 685-6400
(512) 685-6417

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via the Court's ECF system on April 1, 2022.

                                          */s/ Charles B. Hampton*
                                          Charles B. Hampton